


**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FILED
MAR 13 2019
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

WHEELING HOSPITAL, INC.,

    Plaintiff,

CIVIL ACTION NO.:

5:19-CV-32 (Stamp)

v.

LOUIS LONGO,

    Defendant.

---

**COMPLAINT**

Plaintiff Wheeling Hospital, Inc. ("Wheeling Hospital"), a citizen of the State of West Virginia, by and through its counsel, brings this action against Defendant Louis Longo ("Longo"), a citizen of the Commonwealth of Pennsylvania, to recover damages in excess of $75,000 for breach of fiduciary duty and abuse of process, and in support of these claims avers as follows:

### I.    PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Wheeling Hospital is non-profit charitable organization incorporated in the state of West Virginia and with its principal place of business in Wheeling, West Virginia within the Northern District of West Virginia.

2.    Wheeling Hospital is a citizen of West Virginia as defined by 28 U.S.C. §1332(c)(1).

3.    Wheeling Hospital's mission includes providing compassionate care to people and promoting the well-being of its employees and its community.

1

4. Serving the community is central to Wheeling Hospital's existence, and the Hospital strives to ensure that quality and comprehensive medical services are available to the citizens of Wheeling and to other residents of the Upper Ohio Valley.

5. In recognition of community needs, it is particularly important to Wheeling Hospital that it supports individuals and families in their various stages of life, and thus, it has taken steps to build and preserve its women's healthcare services (including obstetrics), pediatrics, cardiology, oncology, family medicine and other essential services.

6. Defendant Longo is an individual residing in, and a citizen of, the Commonwealth of Pennsylvania, and at times pertinent hereto maintained a residential address in Allison Park, Pennsylvania.

7. From on or about November 28, 2011 until on or about August 27, 2015, Longo was employed by Wheeling Hospital as an executive with the title of Executive Vice President.

8. The United States District Court for the Northern District of West Virginia has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1332(a)(1) as this is a civil action between citizens of different states with an amount in controversy in excess of $75,000.

9. Venue lies in the Northern District of West Virginia pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the Northern District of West Virginia.

## II.   FACTS

10. Longo is a certified public accountant with an employment history that reflects Longo having held multiple positions with multiple employers in the field of health care consulting.

11. Longo's various positions have included engagements as a director and/or partner at Alpern Rosenthal & Co., BDO, USA, LLP and Deloitte Touche Tohmatsu Limited, ("Deloitte"), all of which are financial consulting firms.

12. Longo purports to be well familiar with health care finance and compliance and the firms with which he has been employed specialize in serving health care institutions with such matters.

13. Longo currently is employed as the Chief Financial Officer at Warren General Hospital, an 89 bed community hospital located in Northwestern Pennsylvania.

14. In or around March 2006, Deloitte was engaged by Wheeling Hospital to provide healthcare consulting, financial, tax and audit services to the Hospital.

15. As a partner and director at Deloitte, Longo became engaged in and otherwise responsible for audit and compliance matters for Wheeling Hospital and in that capacity had access to Wheeling Hospital's financial accounts, records, material agreements, and management teams.

16. Through this engagement, Longo regularly conducted detailed audit reviews of Wheeling Hospital's business and activities, including analysis of revenues and expenses, material engagements and compliance responsibilities.

17. As part of the engagement, Longo was responsible for identifying risks of fraud and reporting the existence of fraud and/or the risk of fraud to the Board of Directors of Wheeling Hospital.

18. At no time during Longo's engagement with Deloitte did he ever express to Wheeling Hospital that he had concerns regarding fraud at Wheeling Hospital.

19.  At no time during Longo's engagement with Deloitte did he ever express to Wheeling Hospital that Deloitte's audit activities had identified fraud or the risk of fraud with respect to Wheeling Hospital's physician contracts.

20.  To the contrary, at all times pertinent hereto, Longo and Deloitte issued "clean audit reports" and reported no material deficiencies with respect to accounting and/or compliance matters.

21.  In November 2011, Wheeling Hospital hired Longo to serve in an executive capacity overseeing, hospital operations and physician engagements.

22.  A true and correct copy of Longo's Employment Agreement with Wheeling Hospital is attached hereto as Exhibit A.

23.  As an employee and Executive Officer of Wheeling Hospital, Longo was required to exercise the utmost good faith and loyalty toward the corporation and was prohibited from acting in a manner adverse to Wheeling Hospital's interest.

24.  Longo had an affirmative obligation to act in the best interest of the organization and to carry out his job functions in a manner consistent with principles of good faith and with the duties of care and loyalty owed by fiduciaries.

25.  On or about November 28, 2011, Longo affirmed that he had received, read, and understood Wheeling Hospital's Compliance Plan, which provided that Longo was required to report any violations of federal law or regulation that he witnessed to Wheeling Hospital's Corporate Compliance Officer.

26.  At no time during his employment, or in his role as a partner at Deloitte, did Longo report any suspicions of fraud or violations of federal law or regulation to Wheeling Hospital's Compliance Officer.

27. At no time during his employment did Longo report any concerns or suspicions of fraud or violations of Federal law or regulations to the Audit Committee of Wheeling Hospital's Board of Directors, notwithstanding being present at those meetings.

28. One month after Longo received his last severance payment from Wheeling Hospital, on or about September 26, 2016, Longo called Wheeling Hospital's Chief Executive Officer and threatened that, according to his "legal team," he had some kind of case against Wheeling Hospital that could cost the Hospital a lot of money unless Wheeling Hospital settled with him.

29. On December 22, 2017, Longo filed a frivolous and false complaint against Wheeling Hospital in the United States District Court for the Western District of Pennsylvania under the purported auspices of the Federal False Claims Act (the "FCA Complaint"). On information and belief, this Complaint was filed while Longo was employed as the CFO of Warren General Hospital.

30. The FCA Complaint falsely alleges that during Longo's employment at Wheeling Hospital, Wheeling Hospital "defrauded... Medicare and Medicaid out of tens of millions of dollars of federal funds by paying certain physicians excessive compensation."

31. The allegations in the Complaint are false and were made purposefully by Longo in an effort to receive a quick monetary settlement as a Relator. In fact, in his capacity as a Relator, Longo failed to disclose key evidence to the government including, but not necessarily limited to, the results of a 2015 exempt organization audit conducted by the IRS in which physician compensation for the exact physicians named in his Complaint were reviewed.

32. Fair market value is what a willing buyer will pay to a willing seller at the time, and this by necessity, must take into account the quality of the seller's product and the buyer's need for the product in the context of local conditions.

33. In fact, Wheeling Hospital paid its physicians fair compensation at the market rates necessary to secure the high quality care it was committed to provide to the people of the Upper Ohio Valley.

34. Providing quality services from labor and delivery to palliative end-of-life care ensures that patient needs are met and that quality care in these communities is ensured.

35. To require Wheeling residents to travel 80 miles to Pittsburgh (where Longo filed his lawsuit) or 60 miles to Morgantown for comprehensive care is untenable, unsustainable and unsafe. (Notably, Wheeling Hospital is the only Level II trauma center in the Upper Ohio Valley).

36. Importantly, the physicians identified in Longo's FCA complaint are highly qualified and skilled professionals, many of whom have a record of quality and demonstrated leadership that demand a high level of compensation.

37. They are capable, willing and available to provide care in Wheeling, and their compensation agreements reflect their fair market value.

38. It is for this reason that neither Longo nor Wheeling Hospital's long-time auditor Deloitte ever reported to Wheeling Hospital's Board of Directors, Management, or Corporate Compliance Officer any concern or statement that Wheeling Hospital's physician contracts were unlawful.

39. It is for this reason that during his employment, Longo never raised his alleged concerns at the Audit Committee meetings, which again, he attended regularly.

40. The agreements and arrangements cited by Longo are not commercially unreasonable or fraudulent in any respect.

41. The agreements and arrangements cited by Longo are lawful and consistent with practices that Longo (while at Deloitte and perhaps elsewhere) advanced and supported.

42. The explanation is that Longo's actions and conduct as described herein are motivated by a malicious effort to harm Wheeling Hospital and the community it serves.

43. Longo's threats and the legal action he filed in the United States District Court for the Western District of Pennsylvania are consistent with a concerted effort to contort the legal process to his own personal advantage and wealth.

## COUNT I: BREACH OF FIDUCIARY DUTY

44. Plaintiff hereby incorporates paragraphs 1-43 above as if set forth fully herein.

45. As an Executive Officer, Longo owed Wheeling Hospital a duty to comport himself and to carry out his responsibilities in a manner consistent with his role as a fiduciary.

46. Longo owed Wheeling Hospital a fiduciary duty to refrain from threatening to bring false claims in an effort to extort a settlement.

47. At no time during his employment did Longo report to Wheeling Hospital any circumstances constituting violations of federal law or regulation at Wheeling Hospital. If he had first-hand knowledge of any such violations he was obligated to report them.

48. Longo breached his fiduciary duties to Wheeling Hospital, both generally and in the following particulars:

   a) By seeking to extort funds from Wheeling Hospital by threat of a false and meritless legal action;

7

b) By contriving and/or concocting circumstances while in his Executive Office position and/or his position as a partner of Deloitte, to create a claim for damages against the Hospital;

c) By advancing his personal interests to the detriment of Wheeling Hospital;

d) Based on information and belief, by making unprivileged false statements regarding Wheeling Hospital and its physicians, its management and leadership teams; and

e) By defaming Wheeling Hospital and its physicians, its management and leadership teams.

49. The allegations in Longo's FCA Complaint regarding his alleged "first-hand knowledge" of illegal compensation arrangements at Wheeling Hospital are false and malicious.

50. The allegations in Longo's FCA Complaint have been widely published and disseminated.

51. Longo's conduct as described herein was intentional, deceptive, and part of a plan to injure Wheeling Hospital.

52. Wheeling Hospital has suffered significant damages in excess of $75,000 as direct and proximate result of Longo's intentional misconduct, extortion and breaches of fiduciary duty.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Longo, in an amount to be determined but in excess of Seventy-Five Thousand ($75,000.00) plus reasonable attorneys' fees, interest, costs, punitive damages, and such other relief as the Court deems just and proper.

## COUNT II: ABUSE OF PROCESS

53. Plaintiff hereby incorporates paragraphs 1- 52 above as if set forth fully within.

54. By filing a meritless and fabricated FCA Complaint, Longo willfully and maliciously misused and misapplied a legal process to accomplish a purpose not intended or warranted by that process.

55. The purpose of Longo's FCA Complaint is for Longo to obtain a pecuniary award and to inflict harm on Wheeling Hospital.

56. Indeed, based upon information and belief, Longo's FCA Complaint has been characterized by Longo and/or his associates as "Lou's Revenge."

57. Longo's abuse of process was intentional and without privilege.

58. Wheeling Hospital has suffered significant damages in excess of $75,000 as direct and proximate result of Longo's abuse of process.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Longo, in an amount to be determined but in excess of Seventy-Five Thousand ($75,000.00) plus reasonable attorneys' fees, interest, costs, punitive damages, and such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury as to all issues so triable.

WHEELING HOSPITAL, INC., Plaintiff,

BY: _____
Marc B. Chernenko, Esq.
West Virginia State Bar No. 714
William E. Watson Associates
800 Main Street, P.O. Box 111
Wellsburg, West Virginia 26070
Telephone: (304) 737-0881

9

*and*

Roscoe C. Howard, Jr.
William Martin
C. David Paragas
Meena T. Sinfelt
Barnes & Thornburg LLP
1717 Pennsylvania Avenue N.W., Suite 500
Washington, D.C.  20006-4623
Telephone: (202) 371-6378
Roscoe.Howard@btlaw.com
William.Martin@btlaw.com
David.Paragas@btlaw.com
Meena.Sinfelt@btlaw.com
*pro hac vice pending*

*Counsel for Wheeling Hospital, Inc.*