## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is between Wheeling Hospital, Inc. (the *Company*) and Louis Longo (*Employee*).

The Company desires to employ Employee, and Employee desires to be employed by the Company, on the terms and conditions set forth herein.

The parties believe it is in their mutual best interests to make provisions for certain aspects of their relationship during and after the period in which Employee is employed by the Company.

Company and Employee hereby agree as follows:

### ARTICLE 1  EMPLOYMENT

**Section 1.1   Term of Employment.** The Company employs Employee, and Employee accepts employment by the Company, for a continuous one-year term commencing on the date of this agreement.

**Section 1.2   Position and Duties.** Employee shall be employed in the position of Vice President of Human Resources and shall be subject to the authority of, and shall report to, the Company's Chief Executive Officer. Employee's duties and responsibilities will be as assigned by the Company's Chief Executive Officer from time to time. Employee shall devote his exclusive business time, attention and energies to the business interests of the Company while employed by the Company, except as otherwise specifically approved in writing by or on behalf of the Company's Chief Executive Officer.

### ARTICLE 2  COMPENSATION AND OTHER BENEFITS

**Section 2.1   Base Salary.** Subject to earlier termination as set forth in Section 1.1, above, or as set forth in Article 3, the Company shall pay Employee an annual salary of Three Hundred Fifty Thousand Dollars ($350,000.00) per year (**Base Salary**), payable in accordance with the normal payroll practices of the Company. The base salary may increase at any time with the approval of the CEO and the Company shall pay the Employee the annual salary in effect at the time of termination in accordance with the normal payroll practices of the Company. In addition, Employee shall receive a bonus of Fifty Thousand Dollars ($50,000.00) at the end of each one (1) year period of this agreement.

**Section 2.2   Fringe Benefits.** During the period in which Employee is employed by the Company, Employee shall be eligible to participate in any benefit plans and programs that the Company may from time to time make available to its employees including, without limitation, any group health and disability insurance plans now offered or hereafter adopted by the Company, and any Company sponsored qualified plans. Employee shall be eligible to participate in the group health plan that is offered to employees who do not reside in the local community. Employee acknowledges that Employee shall have no vested rights in any such plans or programs, except as expressly provided under the terms thereof, and that such plans or programs may be terminated as well as supplemented at the Company sole's discretion.

Exhibit A

Section 2.3   Expenses. The Company shall reimburse Employee for all reasonable, authorized and approved expenses incurred by Employee in the course of the performance of Employee's duties and responsibilities pursuant to this agreement and consistent with the Company's policies with respect to travel, entertainment, and miscellaneous expenses, and the requirements with respect to the reporting of such expenses.

## ARTICLE 3   TERMINATION

Section 3.1   Termination Without Cause. Subject to the payment of severance as set forth in Section 3.3(a), Company may terminate Employee's employment at any time for any reason or for no reason. Employee may also terminate employment at any time for any reason or for no reason.

Section 3.2   Termination for Cause; Automatic Termination.

(a)   Termination for Cause. Subject to Section 3.3, the Company may terminate Employee's employment and all of the Company's obligations under this agreement at any time for "Cause" (as defined below) by giving notice to Employee stating the basis for such termination, effective immediately upon the giving of such notice or at such other time thereafter as the Company may designate. For "Cause" means any of the following, as determined by the Company's Chief Executive Officer: (i) Employee has materially breached this agreement or has materially breached any other obligation or duty owed to the Company by virtue of his employment by the Company; (ii) Employee has committed gross negligence or willful misconduct in the performance of Employee's duties for the Company; (iii) Employee has taken any action likely to result in material discredit to or material loss of business, reputation or goodwill of the Company; (iv) Employee has willfully, repeatedly and substantially failed to follow reasonable instructions from the officer and/or body to whom Employee reports concerning the operations or business of the Company; (v) Employee has been convicted of a crime the circumstances of which substantially relate to Employee's position with the Company; (vi) Employee has misappropriated funds or property of the Company; or (vii) Employee has attempted to obtain a personal profit from any transaction in which the Company has an interest, and which constitutes a corporate opportunity of the Company or is adverse to the interests of the Company, unless the transaction was approved in writing in advance by the Company's Chief Executive Officer after full disclosure of all details relating to such transaction.

(b)   Termination by Death or Disability. Subject to Section 3.3, Employee's employment and all of the Company's obligations under this agreement shall terminate automatically, effective immediately and without any notice being necessary, upon Employee's death or a determination of disability of Employee. For purposes of this agreement, "disability" means the inability of the Employee, due to a physical or mental impairment, to perform the essential duties and functions contemplated by this agreement, with or without a reasonable accommodation. A determination of disability shall be made by the Company's Chief Executive Officer, which shall consult with a physician or physicians satisfactory to such officer, and Employee shall cooperate with the efforts to make such determination. Any such determination shall be conclusive and binding on the parties. Any determination of disability under this (b) is not intended to alter any benefits any party may be entitled to receive under any long-term disability insurance policy carried by either the Company or Employee with respect to Employee, which benefits shall be governed solely by the terms of any such insurance policy.

**Section 3.3   Rights Upon Termination.**

(a) If Employee's employment is terminated pursuant to Section 3.1, Company shall make severance payments to Employee in an aggregate amount equal to the Employee's Base Salary during the year of such termination, payable in regular installments on the Company's regular salary payment dates for a one-year period following the date of Employee's termination.

(b) If Employee's employment is terminated pursuant to Section 3.2, Employee or Employee's estate shall have no further rights against the Company under this agreement, except to receive (i) any unpaid Base Salary and accrued fringe benefits with respect to the period prior to the effective date of the termination, and (ii) reimbursement of expenses to which Employee is entitled under Section 2.3.

## ARTICLE 4   GENERAL PROVISIONS

**Section 4.1   Notices.** Any and all notices, consents, documents or communications provided for in this agreement shall be given in writing and shall be personally delivered, delivered via facsimile (when transmission is actually received), mailed by registered or certified mail (return receipt requested), sent by overnight delivery (confirmed by receipt), or sent by courier (confirmed by receipt), and addressed as follows, or to such other address as shall be designated in writing:]

| | |
|---|---|
| To the Company: | Wheeling Hospital, Inc.<br>1 Medical Park<br>Wheeling, West Virginia  26003<br>Attention: President |
| To Employee: | Louis Longo<br>[redacted] |

Such notice, consent, document or communication shall be deemed given upon personal delivery or receipt at the address of the party stated above, or at any other address designated in writing, except that if delivery is refused or cannot be made for any reason, then such notice shall be deemed given on the third day after it is sent.

**Section 4.2   Entire Agreement.** This agreement contains the entire understanding and the full and complete agreement of the parties and supersedes and replaces any prior understandings and agreements among the parties with respect to the subject matter hereof.

**Section 4.3   Amendment; Headings.** This agreement may be altered, amended or modified only in a writing signed by both the parties hereto. Headings included in this agreement are for convenience only and are not intended to limit or expand the rights of the parties hereto.

**Section 4.4   Assignability.** This agreement and the rights and duties set forth herein may not be assigned by Employee, but may be assigned by the Company, in whole or in part, to

any entity in which the Company or its stockholders own more than 50% of the equity interests. This agreement shall be binding on and inure to the benefit of each party and such party's respective heirs, legal representatives, successors and assigns.

**Section 4.5** <u>Severability</u>. The obligations imposed by this agreement are severable and should be construed independently of each other. The invalidity of one provision shall not affect the validity of any other provision. If any provision of this agreement shall be invalid or unenforceable, in whole or in part, or as applied to any circumstance, under the laws of any jurisdiction that may govern for such purpose, then such provision shall be deemed to be modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, either generally or as applied to such circumstance, or shall be deemed excised from this agreement, as the case may require, and this agreement shall be construed and enforced to the maximum extent permitted by law, as if such provision had been originally incorporated herein as so modified or restricted, or as if such provision had not been originally incorporated herein, as the case may be.

**Section 4.6** <u>Waiver of Breach</u>. The waiver by either party of the breach of any provision of this agreement shall not operate or be construed as a waiver of any subsequent breach by either party.

**Section 4.7** <u>Governing Law; Construction</u>. This agreement shall be governed by the laws of the State of West Virginia, without regard to any rules of construction concerning the draftsman hereof.

This agreement shall become effective fourteen (14) days after the last date signed by Company and Employee below.

**Louis Longo**

_____       Date: _11/3/11_____


**Wheeling Hospital, Inc.**

By:_____       Date: _11-3-11_____
   Name:
   Title: